UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

Corey Williams and Jamila Smiley,

      Plaintiffs,

v.

MICHAEL BAKER INTERNATIONAL and
SALLYPORT GLOBAL HOLDINGS,

      Defendants.

Case No. _____

JURY TRIAL DEMANDED

**COMPLAINT**

NOW COMES Plaintiffs, Corey Williams and Jamila Smiley, by and through their attorney, Christi Wallace, Esquire, and files this Complaint alleging as follows:

**I. Nature of the Action**

1.    Plaintiffs bring this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §2000e.  Plaintiffs faced significant sexual harassment which management was aware of and in response to their complaints, they were retaliated against and subjected to a hostile work environment, which resulted in their terminations.

**II. Jurisdiction and Venue**

2.    This action arises under Title VII, 42 U.S.C. §2000e.  This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331

3.    This Court has supplemental jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1332(a).

4.    Plaintiff, Corey Williams is a resident and citizen of Louisiana.  Plaintiff, Jamila Smiley is a resident and citizen of Texas.  Defendant, Michael Baker International is a business

located in Pittsburgh, Pennsylvania.  Defendant, Sallyport Global Holdings, is a business located in Virginia.  This action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1332(a).

## III. Parties

5.     Plaintiff, Corey Williams, ("Mr. Williams"), is an adult individual residing at 2022 Hope Street, New Orleans, LA 70119.

6.     Plaintiff, Jamila Smiley ("Ms. Smiley"), is an adult individual residing at 8101 Research Forest Drive, Unit 12111, The Woodlands, TX 77382.

7.     Defendant, Michael Baker International ("collectively Defendants"), is a business with a location at 500 Grant Street, Suite 5400, Pittsburgh, PA 15219.

8.     Defendant, Sallyport Global Holdings ("collectively Defendants"), is a business with a location of 3601 Eisenhower Avenue, Alexandria, VA 22304.

## IV. Facts

9.     Mr. Williams became employed with Defendants on August 7, 2015. He held the position of Maximo Item Master Specialist.

10.    Ms. Smiley became employed with Defendants on August 3, 2015.  She held the position of Maximo Item Master Specialist.

11.    Plaintiffs arrived in Iraq for Defendant on or around August 5, 2015.

12.    Upon arriving, Plaintiffs noticed a conflict between Team One and Team Two with April Brown (Ms. Brown), the leader (Manager) for Team One, jockeying for control of the two teams.

13.    Plaintiffs tried to stay out and away from this power struggle.

2

14.   One morning, Ms. Smiley told Mr. Williams she was uncomfortable with the harassment she was experiencing at the hands of the Defendants.

   a.   There were numerous verbal altercations between Ms. Brown and Karen Jeslyn (Ms. Jeslyn) because they were in a relationship and one tried to make the other jealous by talking to Ms. Smiley. Ms. Brown pulled Ms. Smiley aside and told her, "my life was so much better before you arrived, no one gets what they want in life and neither will you."

   b.   In another incident, Ms. Brown saw Ms. Smiley in the cafeteria line. Ms. Brown was ahead of Ms. Smiley and got out of line walked all the way back around and walked up behind Ms. Smiley and yanked her hair and then asked Ms. Smiley, "are you scared of me?"

   c.   At one point, Ms. Brown went up to Ms. Smiley and asked her if she was done with her work. When Ms. Smiley indicated that she was done, Ms. Brown told her she had to do all of Bernice Atkinson's ("Ms. Atkinson") work but Bernice was watching movies and constantly on the phone. When she refused, she faced significant retaliation from Ms. Brown and Ms. Atkinson.

      i.   Ms. Smiley began getting moved back and forth between Ms. Brown and Ms. Jeslyn's team for no apparent reason besides to create jealousy or convert her to their lesbian team.

15.   The retaliation intensified when Ms. Smiley was subjected to sexual harassment and a hostile working environment.

16.   On August 11, 2015, Phillipe DeLeon (Mr. DeLeon) asked Ms. Smiley if she was a lesbian.

3

17.     On October 8, 2015, Ms. Jeslyn came up to Ms. Smiley and kissed her on her neck.

18.     On October 9, 2015, Ms. Jeslyn grabbed Ms. Smiley's butt in front of Mr. Williams and said to Ms. Smiley, "come on Boo Boo." Ms. Brown saw the harassment and did not address it in any way.

     a.  Later that day, Ms. Smiley was told to report to Ms. Jeslyn's room.

     b.  When Ms. Smiley arrived, Ms. Jeslyn was standing in her room wearing a sports bra and tiny shorts.

     c.  Once again, Ms. Brown witnessed this and nothing was done.

     d.  Ms. Smiley immediately left and went straight to Mr. Williams room. Ms. Smiley was shaking and explained what just happened and how terrified she was because she thought she was going to be raped or molested.

19.     Ms. Brown also isolated Ms. Smiley for criticism despite her exemplary performance.

20.     Ms. Brown, Ms. Atkinson, Arthur Moore and other team members began to spread rumors that Ms. Smiley was sleeping with coworkers.

21.     Ms. Brown, Ms. Jeslyn and Ms. Atkinson would also rotate poking and harassing Ms. Smiley.

22.     On October 15, 2015, Ms. Smiley had enough and called a staff meeting and told everyone about the sexual harassment and that it needed to stop.  Mr. Williams was an acting supervisor as Ms. Jeslyn went home on vacation. Mr. Williams also called a meeting and told everyone that "he will not tolerate insubordination or disrespect among colleagues."

23.    Because of this meeting, Ms. Brown started retaliating against both Mr. Williams and Ms. Smiley and creating a hostile environment for both.

     a.  Ms. Brown claimed she needed to change the schedule within a week's notice and that it would help with team collaboration. Mr. Williams discovered there was no immediate need to change the schedule. This was an attempt to split up the team to harass Mr. Williams and Ms. Smiley individually so their support for one another would be minimal.

     b.  Ms. Brown and Ms. Jeslyn began moving Ms. Smiley from one team to another and back and attempt to put her on teams she was not on. They would change the schedules after a meeting so Mr. Williams and Ms. Smiley were not working together.

     c.  Mr. Williams and Ms. Smiley's work was also heavily scrutinized daily.

24.    Mr. Williams and Ms. Smiley reported this harassment on November 9, 2015, by filing a formal complaint with Mark Richardson ("Mr. Richardson") and Kim Poole ("Mr. Poole"), Project Managers.   Each wrote a detailed letter of the harassment and retaliation they were subjected to.  *See attached Exhibit A.*

     a.  Mr. Richardson said he would investigate.

     b.  Plaintiffs were immediately transferred to the Property Department without consent.

     c.  Plaintiffs were moved right next door (within five feet) to the where the harassers worked.

  d. Mr. Williams and Ms. Smiley asked to be moved to a different office so they would not have to be close to the harassers while the investigation was being conducted.

  e. Mr. Richardson said there was nothing he could do because of limited space and to let the investigation run its course.

    i. Mr. Richardson lied as Balad Air Base is the largest base in Iraq and where Plaintiffs worked is about 16 square miles with plenty of space to make sure Plaintiffs did not encounter their harassers while the investigation ensued.

  f. Mr. Richardson forced Mr. Williams and Ms. Smiley to continue to be subjected to a hostile working environment.

25. Defendants did nothing because of this report. Mr. Williams, therefore, called another Team meeting where he instructed everyone to respect each other and not discriminate against Ms. Smiley. After this meeting,

  a. Mr. Williams was then approached by Ms. Atkinson who publicly discussed her negativity towards Ms. Smiley in front of the team at the materials yard.

  b. Ms. Atkinson went on ranting that Mr. Williams defended Ms. Smiley too much.

  c. Mr. Williams explained to Ms. Atkinson that he would not tolerate co-workers belittling colleagues or embarrassing them publicly.

  d. Ms. Atkinson told Mr. Williams, "stop defending her."

  e. Ms. Atkinson started screaming that Ms. Smiley's work was "fucked up" and that she was not going to stand for this.

26.     Because of this meeting, Ms. Atkinson engaged Ms. Brown to challenge Mr. Williams' position as Team Lead. Ms. Brown then began singling out Mr. Williams for criticism about anything and everything without justification, means or reason.

    a.  Mr. Williams was subjected to a meeting at BLDG 300 Room 309.  As soon as Mr. Williams walked through the door, in front of everyone, Ms. Brown started criticizing the spreadsheet Mr. Williams was working on.

    b.  Ms. Brown pulled Mr. Williams to the side and told him, "I am the boss and you have to do exactly what I tell you to do because I am the Manager."

    c.  Ms. Jeslyn then started attacking Ms. Smiley's work by claiming she couldn't find her documents. When Mr. Williams went and found the documents in the system, Ms. Jeslyn nevertheless criticized Ms. Smiley by saying, "I found the document but it was all wrong."

    d.  Mr. Williams once again reported this retaliation to Defendants but H.R. was inundated by Ms. Brown.  Therefore, Mr. Williams and Ms. Smiley had to report the conduct to Senior Management.  Yet again, nothing was done.

27.     On November 12, 2015, Plaintiffs confronted Mr. Poole and Mr. Richardson via e-mail about the investigation because the retaliation and hostile environment were intensifying. Nothing was done.

28.     On November 13, 2015, Mr. Williams and Ms. Smiley submitted their resignations because the discrimination became so bad and nothing was being done.

### V. Allegations

<u>**Count I**</u>
**Sexual Discrimination**

29.     The preceding paragraphs are incorporated herein as if set forth at length.

30.   Ms. Smiley was fully qualified to do her job.

31.   Ms. Smiley protected class is Sex.

32.   All administrative remedies were exhausted.

33.   Defendants engaged in the following unlawful discrimination in violation of Title

VII:

   a.   Ms. Smiley was subjected to sexual discrimination and a hostile work
        environment.

        i.   Ms. Smiley faced constant sexual harassment at the hands of Ms. Brown,
             Ms. Jeslyn and Ms. Atkinson.

        ii.  Ms. Jeslyn and Ms. Brown would regularly touch Ms. Smiley in
             inappropriate manners. Mr. Williams and Ms. Smiley reported this
             misconduct to Defendants, but nothing was done.

   b.   When Ms. Smiley complained to H.R. and upper management, she was totally
        ignored.

        i.   Ms. Smiley was forced to work next door (within 5 feet) of her harassers
             despite asking to be moved to a different office while the investigation
             was underway.

   c.   After complaining about the sexual harassment, Ms. Smiley continued to
        experience a hostile work environment and faced regular retaliation.

        i.   Several Ms. Smiley's coworkers would spread rumors of her sleeping with
             co-workers.

        ii.  These same workers also regularly came by Ms. Smiley's workplace to
             poke and harass her.

8

      iii.  Ms. Smiley was frequently moved between positions to make her uncomfortable and prevent Mr. Williams from helping her.

      iv.  Her work would be constantly criticized for no apparent reason but to be bullied and intimidation tactics from Ms. Brown.

  d.  Ms. Smiley constructively resigned on November 13, 2015.

**Count II**
**Hostile Work Environment/Retaliation**

34.    The preceding paragraphs are incorporated herein as if set forth in full.

35.    Mr. Williams and Ms. Smiley's protected class is Sex

36.    Mr. Williams and Ms. Smiley were fully qualified to do their job.

37.    All administrative remedies were exhausted.

38.    Defendants engaged in the following unlawful discrimination in violation of Title VII:

  a.  Ms. Smiley faced harassment and a hostile work environment from her first day with Defendants.

      i.  Ms. Smiley was frequently touched in inappropriate ways.

      ii.  Ms. Smiley was questioned about her sexuality and regularly mocked for her sexuality (i.e., not being part of the Lesbian team).

      iii.  Ms. Brown and Ms. Jeslyn would sexually harass Ms. Smiley.

  b.  When Mr. Williams and Ms. Smiley complained to H.R. and upper management, they were ignored.

      i.  Both were forced to work next door to the harassers despite asking to be moved to a different office.

9

    c.  Mr. Williams and Ms. Smiley were retaliated against when they complained of the sexual harassment.

        i.  Ms. Smiley was transferred between positions frequently and faced random scheduling changes.

        ii.  Plaintiffs were additionally singled out for criticism despite good work performance and attitude.

    d.  Defendants created a hostile work environment for Plaintiffs.

        i.  Mr. Williams was frequently criticized by coworkers for his defense of Ms. Smiley and trying to stop the harassment and hostile environment. These coworkers treated Mr. Williams with hostility and frequently made his work difficult.

        ii.  Ms. Smiley began being isolated for criticism and her work was mocked in front of all her coworkers.

        iii.  Ms. Brown started randomly changing Ms. Smiley's schedule to make her life more difficult.

        iv.  Ms. Smiley's coworkers also spread rumors about her having sexual relationships with coworkers and generally poked at her to get into her personal business.

    e.  Mr. Williams and Ms. Smiley complained to H.R. and Upper management but were ignored.

    f.  Mr. Williams and Ms. Smiley constructively resigned on November 13, 2015.

**<u>Request for Relief</u>**

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against the

Defendant for the following:

    a.  Loss of wages;

    b.  Loss of future wages;

    c.  Additional punitive damages in excess of $1,200,000;

    d.  Plaintiff's legal fees in excess of $55,000;

    e.  Pre-judgment and continuing interest;

    f.  Court costs; and

    g.  Other such relief as the Court may deem just and proper.

Respectfully submitted,

*Christi Wallace*

Christi Wallace, Esq.
Kraemer, Manes and Associates, LLC
U.S. Steel Tower, 48th Floor
600 Grant Street, Suite 4875
Pittsburgh, PA 15219

11